**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 13-cv-02664-REB-NYW

JOSHUA C. JOHNSON,

      Plaintiff,

v.

GEORGE SANTINI,
ALICIA VINYARD,
T.K. COZZA RHODES,
PETER BLUDWORTH,

      Defendants.

---

**ORDER ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND TO DEFER
CONSIDERING THE MOTION FOR SUMMARY JUDGMENT**

---

Magistrate Judge Nina Y. Wang

      This matter is before the court on Plaintiff Joshua C. Johnson's "Motion for Reconsideration to Defer Summary Judgment Until Discovery Has Been Provided and Motion to Compel" (the "Motion").[1]   [#87, filed March 23, 2015].   This matter was referred to this Magistrate Judge pursuant to the Order Referring Case dated December 13, 2013 [#11] and memorandum dated March 23, 2015 [#89].   This court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law.   For the following reasons, the Motion is GRANTED IN PART and DENIED IN PART.

---

[1] This court construes the pending motion as one to compel written discovery under Rule 37(a)(3)(B) and for relief pursuant to Fed. R. Civ. P. 56(d).

## PROCEDURAL HISTORY

Pro se Plaintiff Joshua C. Johnson ("Plaintiff" or "Mr. Johnson"), is a prisoner in the custody of the Federal Bureau of Prisons ("BOP") who was incarcerated at the Federal Correctional Institution in Florence, Colorado ("FCI Florence") when the events giving rise to this lawsuit took place.  He initiated this action on September 30, 2013 by filing a Prisoner Complaint for money damages and injunctive relief pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  On October 10, 2013, he was granted leave to proceed pursuant to 28 U.S.C. § 1915.  [*See* #4].  Pursuant to court order, Plaintiff filed an Amended Complaint on November 22, 2013, naming Defendants and asserting three claims for deliberate indifference to his medical needs in violation of the Eighth Amendment.  [#8].  Following an extension of time to respond to the Amended Complaint, Defendants filed a Motion for Summary Judgment on April 30, 2014.  [#27].  On August 21 and 28, 2014, Plaintiff requested extensions of time to respond to the Motion because he did not possess the documents necessary to formulate a response.  [#41, #43].

On September 2, 2014, Magistrate Judge Boland denied Defendants' Motion for Summary Judgment without prejudice and ordered them to file an Answer [#44], which they filed on September 11, 2014 [#45].  Judge Boland held a Preliminary Scheduling Conference on October 22, 2014, at which he entered a Scheduling Order directing the Parties to complete discovery by April 22, 2015 and file dispositive motions on or before May 22, 2015.  [#54].

Defendants thereafter filed a Motion for Summary Judgment that is currently pending before this court.  [#55].  Defendants also filed a Motion to Stay Discovery until after disposition of the Motion for Summary Judgment arguing they should not be burdened with pre-trial discovery until the court ruled on their qualified immunity argument.  [#57].  Judge Boland

denied the Motion to Stay on November 4, 2014 [#61], and Defendants filed an objection to that Order on November 17, 2014.  [#65].

On December 15, 2014, Defendants moved for an extension of time to respond to Plaintiff's first set of written discovery requests.  [#72].  The court granted the motion and ordered Defendants to respond to the requests on or before January 14, 2015.  [#74].  Defendants moved for an extension of time to respond to Plaintiff's second set of discovery requests on January 30, 2015.  [#80].  The court granted the motion and ordered Defendants to respond to the requests on or before March 4, 2015.  [#82].  This action was reassigned to the undersigned Magistrate Judge for pretrial matters on February 9, 2015.  [#83].

On February 23, 2015, Plaintiff sought an extension of time of 80 days to respond to the Motion for Summary Judgment on the basis that the court had granted Defendants leave to produce responses to his discovery requests on or before the day his Response to the Motion for Summary Judgment was due and he required those discovery responses in preparing his Response.  [#84].  The following day, this court granted Plaintiff's request in part, and ordered that he file his Response on or before April 3, 2015.  [#86].

Plaintiff filed the pending Motion on March 23, 2015 [#87], along with a declaration attesting that certain facts are unavailable to him.  [#88].  Plaintiff asks the court to order Defendants to produce materials sought in his requests for production, order Defendant Santini to respond to the second set of Interrogatories, and "defer the summary judgment proceedings" until after the discovery issues have been resolved and the requested items produced. Defendants filed a Response on April 6, 2015, which details the various extensions that Plaintiff has received and asserts that as individual government employees, Defendants do not have the discovery Plaintiff seeks.  [#93].

# BACKGROUND

Plaintiff suffers from a rare, congenital neurologic disease known as Charcot-Marie Tooth ("CMT").[2]  He claims that Defendants, in their individual capacities, acted with deliberate indifference to his serious medical needs by denying him adequate pain medication, physical therapy, transfer to a BOP medical facility, and orthopedic surgery with an outside specialist.

In their Motion for Summary Judgment, Defendants assert they are entitled to qualified immunity, that Plaintiff merely disagrees with them regarding the prescribed course of treatment and timing of medical care, and that Defendants Cozza-Rhodes and Bludworth did not personally participate in a constitutional violation.  Of particular relevance here, Defendants argue "[t]he record does not establish that during Plaintiff's incarceration [] he suffered any serious complications or further injury related to his CMT or from Dr. Santini's management of it"; "[t]he nature of Plaintiff's condition … was not so obvious that a lay person would have recognized that physical therapy or surgery, or care beyond what was being provided at FCI Florence, was necessary"; and "Plaintiff's need was not so obvious that any of the other medical staff (besides Dr. Santini and Defendant Vineyard) who cared for him at FCI Florence raised concerns about his care to Defendants and Plaintiff does not allege that he alerted these other providers about his concerns over his care." [#55 at 13].  Defendants assert in their Statement of Undisputed Material Facts that Defendant Cozza-Rhodes "was not aware of any recommendation by any medical provider that Plaintiff needed physical therapy or a transfer to a medical facility."  [#55 at ¶ 48].  Defendants further state as an undisputed fact that the Utilization Review Committee evaluated Plaintiff's need for an orthopedic specialist consultation

---

[2] This disease causes muscle imbalances and can lead to deformities.  The progression of Plaintiff's disease has caused his right foot to angle grossly to the side.  [#8 at 5].

on August 22, 2013, and the recommendation was forwarded to the Regional Office for final approval. [#55 at ¶ 31].

Plaintiff argues that the discovery requests herein at issue are aimed at addressing Defendants' arguments. Specifically, he seeks to show through emails that he was forced to leave his prison job because of complications related to CMT, and that his supervisors as laypeople recognized his impaired state[3]; that the recommendation for him to see an outside specialist was never sent to the Regional Office and that without the recommended treatment he suffered skin ulceration and significant pain; and that Defendants Santini and Cozza-Rhodes had the authority to arrange for him to see an outside specialist and failed to take that action. *See* [#87].

## ANALYSIS

Federal Rule of Civil Procedure 26(b)(1) authorizes discovery of "any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Relevancy is broadly construed, and a request for discovery should be considered if there is "any possibility" that the information sought may be relevant to the claim or defense of any party. *See, e.g., Sheldon v. Vermonty,* 204 F.R.D. 679, 689-90 (D. Kan. 2001). However, all discovery is subject to the proportionality limitations imposed by Rule 26(b)(2)(C). *See* Fed. R. Civ. P. 26(b)(1). Therefore, while the court may order discovery of any matter relevant to the issues involved in the action, it "must limit the frequency or extent of discovery" under certain circumstances. Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

---

[3] These assertions are not included in the Amended Complaint.

"When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Simpson v. Univ. of Colo.,* 220 F.R.D. 354, 359 (D. Colo. 2004) (citations omitted).  The Advisory Committee Note to the 2000 Amendment to Rule 26(b)(1) directs courts to involve themselves in discovery disputes to determine whether discovery is relevant to the parties' claims or defenses, and if not, to determine whether "good cause exists for authorizing it so long as it is relevant to the subject matter of the action."

Rule 56(d) provides that if a nonmovant shows by declaration that he "cannot present facts essential to justify [his] opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d).  Rule 37(a)(3)(B) also permits a party to seek a court order compelling discovery that has been requested but not produced.

<u>Requests for Production at Issue</u>

On December 29, 2014, Plaintiff propounded the following requests for production ("Requests for Production"), and Defendants responded with the corresponding objections on February 27, 2015:

No. 1: "a full and complete copy of the referral that was supposedly sent to the Regional Office, and copy of any response made by them to that referral, including but not limited to any and all electronic communications, e-mails etc. between FCI Florence and the Regional Office concerning this matter."  [#87-1 at 1].  Defendants objected that "[t]he requested documents,

which are official Bureau of Prisons records, are not in the possession, custody, or control of the individual defendants." *Id.*

No. 2: "a full and complete copy of any and all Administrative Remedies filed by the Plaintiff while he was housed at FCI Florence, including but not limited to all Informal Resolutions, BP-9, 10, and/or 11." [#87-1 at 1-2]. Defendants objected that "[t]he documents are not in the possession, custody or control of the individual defendants. Furthermore, the information is equally available to the plaintiff to obtain by referring to the Freedom of Information Act or 28 C.F.R. § 542.19." [*Id.* at 2].

No. 3: "a full and complete copy of any and all inmate request to staff [sic] (Cop-Outs) written by the Plaintiff to any of the Defendants in this case requesting either narcotic pain medication, physical therapy, a transfer to a medical center or any other subject matter." [#87-1 at 2]. Defendants objected that "[t]he documents are not in the custody or control of the individual defendants. Furthermore, the requested documents are located in either the Plaintiff's medical or central files, both of which are at Plaintiff's current institution, USMCFP Springfield, and not FCC Florence, which is the duty station for the defendants." [*Id.* at 2].

No. 4: "a full and complete copy of the request for a consult with a foot/ankle specialist written by Dr. Santini on June 4, 2013, and submitted to the URC, including but not limited to any responses by the URC to the request." [#87-1 at 2]. Defendants objected that "[t]his document is not in the custody or control of the individual defendants. Furthermore, the requested documents are located in the Plaintiff's medical file that is at Plaintiff's current institution, USMCFP Springfield, and not FCC Florence which is the duty station for the defendants." *Id.*

No. 5: "a complete copy of the Plaintiff's personel files [sic] and/or records from Unicor for the months of September through December, 2013, including but not limited to any records or files reflecting the Plaintiff's status being changed to medically unassigned."   [#87-1 at 2]. Defendants objected that "[t]his document is not in the custody or control of the individual defendants." *Id.*

No. 6: "a full and complete copy of any and all electronic communications (e-mails, text, etc.) that were sent between any of the Defendants in this case, or any electronic communications sent from any Defendant to any other member of the [BOP] and/or to any member of American Correctional Healthcare regarding any of the following: a) Plaintiff's medical condition; b) Plaintiff's need for a consult with a [specialist]; c) Plaintiff's need for pain medication; d) Plaintiff's need for physical [therapy]; e) Plaintiff's need for a transfer to an MRC; and f) any other subject matter relating or referring to the medical care and treatment being provided to the Plaintiff while he was at FCI-Florence." [#87-1 at 2-3].  Defendants objected that they, "who are sued in their individual capacities, are not authorized to release this information, which consists of official [BOP] records." [*Id.* at 3].

<u>Interrogatories at Issue</u>

On January 23, 2015, Plaintiff propounded the following second set of interrogatories ("Interrogatories") on Defendant Santini:

No. 1: "In your response to No. 4, of Plaintiff's first interrogatories you stated that prior to obtaining the services of [ACH], 'medical secretaries would schedule outside medical trips.' Please describe in as much detail as possible the reasons why you failed to include this information in the Declaration signed by you in support of [the Motion for Summary Judgment]."

No. 2: "On 5-29-2013, Plaintiff was seen by the consultant Orthopedic Surgeon Dr. Patterson whom recommended [sic] that reconstructive surgery be performed to avoid possible infection and ultimately an amputation of the Plaintiff's foot.  He also warned that Plaintiff was likely to develop ulceration and breakdown of the skin.  Dr. Patterson stated that this type of surgery was beyond the scope of his practice and that Plaintiff needed to be seen by an ankle/foot specialist and that he even knew of a couple of specialists in the Colorado area that he would be happy to help the BOP get into contact with.  However, despite Dr. Patterson's recommendation, Plaintiff was never taken to be seen by an ankle/foot specialist, but instead nine months later Plaintiff was taken out to be seen by a regular Orthopedic Surgeon for yet a second time whom made [sic] the exact same recommendations as Dr. Patterson except that only this time, Plaintiff had developed an ulceration on his foot just like Dr. Patterson had warned nine months earlier. Please explain in as much detail as possible the following: (a) why wasn't the Plaintiff ever seen by an ankle/foot specialist as recommended by Dr. Patterson on 5-29-2013; (b) why was it necessary for the Plaintiff to be seen again by a regular Orthopedic Surgeon for a second time versus being seen by an ankle/foot specialist, and was this because the BOP doubted the recommendation and diagnosis of Dr. Patterson; and (c) what was the reason for the nine month delay."

No. 3: "Please describe in as much detail as possible do you recall having a conversation with the Plaintiff in which you informed him that the reason he feels like he's in pain was because when he looks at his foot he sees it grossly angles to the side."

No. 4: "In your declaration attached to the Motion for Summary Judgment p. 4, para. 8, you explain the current procedures being used to arrange outside appointments through [ACH], but you failed to explain exactly how these duties were performed prior to obtaining their

services.  Please describe in as much detail as possible the following: (a) Prior to obtaining the services of ACH what were the procedures used for obtaining an appointment and scheduling an outside medical trip with either contract physicians and/or specialists of a particular kind; (b) exactly whom were [sic] these tasks completed by (please include first and last names); (c) exactly who's responsibility was it to supervise and oversee these procedures to ensure that they were being completed properly and on time, and are these individuals still employed at the facility, if not do you know where they can be located or whom they are now employed with [sic]; and (d) during this process what position does the inmates treating physician [sic] play in this procedure, and was it possible for the physician to communicate with the individuals mentioned above on a regular basis regarding the need for or the status of a pending appointment."  [#87-4 at 4].

Plaintiff concurrently mailed a letter to defense counsel, Assistant United States Attorney Mark Pestal, asking that he identify the individuals who comprised the medical staff responsible for arranging appointments with outside specialists.  [#87 at 8].  On February 24, 2015, Mr. Pestal responded to the second set of interrogatories objecting on behalf of Defendant Santini on the basis that Plaintiff had already exceeded the 25 interrogatories provided for in the Scheduling Order.  On February 24, 2015, Mr. Pestal responded to Plaintiff's letter, stating he had no information regarding the medical staff, that his role in the litigation was "limited to representing the named defendants," and declining to provide the requested information.  [#87-5].

Plaintiff argues he cannot prepare a response to the Motion for Summary Judgment because Defendants have not produced materials responsive to his requests.  In their Response to the Motion to Compel, Defendants represent they have been sued in their individual capacities and do not have custody and control of the requested documents.  Defendants further represent

that pursuant to 28 C.F.R. § 16.22, they cannot disclose information "relating to or based upon material contained in the files of the [BOP]," without prior authorization. [#93 at 4-5]. Finally, Defendants argue that the Scheduling Order limits *each side* to 25 interrogatories, including discrete subparts. [*See* #54 at 1].

I cannot compel Defendants to produce materials they represent are not within their possession, custody, or control. *See U.S. v. 25.02 Acres of Land, More or Less, situate in Douglas County, State of Colorado*, 495 F.2d 1398, 1402 (10th Cir. 1974) (citing *Norman v. Young*, 422 F.2d 470, 472-73 (10th Cir. 1970)). Generally, a party seeking tangible items held within the possession of a nonparty must serve the nonparty with a subpoena duces tecum. *See* Fed. R. Civ. P. 45(b); 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure 3D § 2456. Defendants assert the BOP is the entity in possession, custody, and control of the requested materials, and is not a named party in this action. The BOP is an agency of the Department of Justice, and Defendants cite 28 C.F.R. § 16.22 as precluding them from disclosing BOP documentation without prior approval in federal or state proceedings in which the United States is not a party.

In *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 463-70 (1951), the Supreme Court held the government could properly refuse to produce certain documents in a prisoner's habeas corpus proceeding pursuant to an order by the United States Attorney General designating all official files, documents, records, and information in the offices of the Department of Justice as confidential. Neither the BOP nor the United States is a party to this action. As subordinate federal employees acting pursuant to agency direction, Defendants cannot be required to release information without authorization from their superiors. *In re Gray*, 162 F.3d 1172 (10th Cir.

11

1998).  *See also U.S. v. Allen*, 554 F.2d 398, 406 (10th Cir. 1977) (recognizing *Touhy*, 340 U.S. at 463-70).

As for the interrogatories, Plaintiff propounded a first set of ten numbered interrogatories on Defendant Cozza-Rhodes and a first set of eight numbered interrogatories on Defendant Santini, prior to propounding a second set of four numbered interrogatories on Defendant Santini. [*See* #93-5 and #87-3, respectively].  Federal Rule of Civil Procedure 33 provides that a party may serve up to 25 interrogatories on another party, *unless otherwise stipulated or ordered by the court*.  In this case, Judge Boland limited the parties in the Scheduling Order to 25 interrogatories per side, to include discrete subparts.  [*See* #54].  I find that Interrogatories No. 1 and 6 directed to Defendant Cozza-Rhodes contain a subpart each.  [#93-5 at 1-3].  The other Interrogatories include additional detail, but all parts appear to fall under a single umbrella topic.  Accordingly, Plaintiff has propounded 20 interrogatories and may propound five more.

While the court cannot compel Defendants to produce materials they lack authority to produce, and which are not within their possession or control, I find that the Requests for Production seek materials relevant to the claims and defenses in this lawsuit. Therefore, I will defer the consideration of the Motion for Summary Judgment as permitted by Rule 56(d) to allow Plaintiff time to serve a subpoena duces tecum on the BOP.  Accordingly,

IT IS ORDERED:

(1) Plaintiff's Motion [#87] is **GRANTED IN PART** to the extent it seeks an order compelling Defendant Santini to respond to the Interrogatories, and is **DENIED IN PART** to the extent it seeks an order compelling Defendants to produce materials responsive to the Requests for Production;

(2) Plaintiff's Motion [#87] is **GRANTED** to the extent it seeks relief under Rule 56(d);

(3) The deadline by which Plaintiff shall respond to the Motion for Summary Judgment is extended to **July 6, 2015** for the purpose of permitting Plaintiff access to the discovery he requests;

(4) Plaintiff shall serve any subpoena on the BOP or file an appropriate request for his records pursuant to the Freedom of Information Act on or before **May 15, 2015**,

(5) No extensions of these deadlines will be permitted; and

(6) All other requests are **DENIED**.

DATED:  April 17, 2015                              BY THE COURT:

                                                    s/Nina Y. Wang_____
                                                    United States Magistrate Judge